Circuit Court, District of Columbia. June Term, 1816.

PLEADING AT LAW—NON ASSUMPSIT—FORMER RECOVERY.

The defendant upon non assumpsit, may give in evidence a former recovery of judgment against him upon an attachment in a court in Virginia; and such former judgment is a good bar to the action here.

Assumpsit [by William Stone against Edward Stone] for money had and received.

The defendant, at the trial, upon non assumpsit, produced a record of a judgment by attachment against him, in Virginia, for the same cause of action, at the suit of the plaintiff, and prayed the court to instruct the jury that if they were satisfied by the evidence that it was for the same cause of action, the plaintiff could not recover in this suit, which instruction the court gave. (THRUSTON, Circuit Judge, absent.)

Mr. Wiley, for plaintiff.
Jones & Key, for defendant.

Motion by the plaintiff's counsel, for a new trial, on the ground of misdirection of the jury by the court. Refused.

STONE (UNITED STATES v.). See Case No. 16,407.

STONE (WOODWORTH v.). See Case No. 18,021.

STONE (WYETH v.). See Case No. 18,107.

[1] [Reported by Hon. William Cranch, Chief Judge.]

STONE, The CHARLES R. See Cases Nos. 2,619 and 2,620.

STOOKEY (JAMES v.). See Cases Nos. 7,184 and 7,185.

STOOPS (SMITH v.). See Case No. 13,110.

## Case No. 13,489.

### STORAGE CO. v. The THOMAS.

[Case reported under above title in 9 Phila. 364; 29 Leg. Int. 116; 4 Chi. Leg. News, 218,—same as Case No. 3,769.]

## Case No. 13,490.

### Ex-parte STORER.

[2 Ware (Dav. 294), 298.] [1]

District Court, D. Maine. June 12, 1846.

SPECIFIC PERFORMANCE — PART PERFORMANCE—LIMITATION OF ACTIONS—TIME WHEN STATUTE BEGINS TO RUN.

1. A specific execution of a parol contract for the sale of lands will be decreed by a court of equity, when it has been partly performed.

2. But in the sense of equity, when a specific performance of such a contract is sought, those acts only are considered as part performance which would operate as a fraud on parties unless the whole contract is executed.

3. The payment of part of the price is not such an act. But admitting the purchaser to take possession under the contract, and to lease the land, or make improvements upon it, is, in the sense of a court of equity, a part performance.

4. By the statute of limitations in Maine, in an action on a mutual and open account current, the right of action for the whole balance is deemed to have accrued at the time of the last item proved in the account. But if a party sleeps on a demand without entering it on his account, until the period of limitation is elapsed, he cannot extract it from the statute by entering it afterwards on his account.

5. Where a party has an unliquidated demand, the limitation begins to run from the time when the right of action accrues.

6. But if the parties, after the right of action has accrued, come to a settlement, and determine the sum due by mutual agreement, the limitation begins to run from the time of such settlement.

[Cited in Augerais v. Naglee, 74 Cal, 60, 15 Pac. 374.]

This was the case of a proof of debt offered by Seth Storer, against the estate of Jonathan Tucker.

WARE, District Judge. Storer offered proof of a debt against the estate, consisting of various items of account and promissory notes. The commissioner admitted the proof on the account to the amount of $469.33, and rejected all the other claims, either as barred by the statute of limitations or inadmissible for other causes. The statute was admitted by the creditor to be a bar to all except two items, and, as to these, he has excepted to the decision of the commissioner, and asked the judgment of the court.

[1] [Reported by Edward H. Davies, Esq.]

1. The first is for rent, or interest in the nature of rent, on a lot of land in the town of Saco, at the rate of $42 per annum, from Nov. 26, 1827, to the time of the bankruptcy. The facts, either as admitted by the parties or proved, are these: Some time before the date mentioned, but how long does not appear, Tucker, by a parol agreement, bargained with Storer for the purchase of this lot for $700. At the time of the agreement, Storer's office was standing on the lot, and it was agreed between the parties, that the building should remain on the land until Tucker should give notice to have it removed, and in the mean time the rent of the land should be an equivalent for the interest which would be due on the price. In this state the business remained until the time above mentioned, when Tucker gave Storer notice to remove his office, which he did; Tucker then intending to put up a building on the lot the following season. He, however, changed his purpose, and the lot remained vacant until 1835, when Tucker let the land to one Banks, at the rent of $60 a year. Banks placed an old house upon it, and occupied it for the greater part of a year, while he was building a new house, and then left it. The lot has since remained vacant. Banks and Tucker having an open account, the rent remained unsettled until a short time previous to Tucker's bankruptcy, when it was allowed to Tucker in the settlement, to the amount of $56. At first Tucker hesitated at receiving the rent, urging that the land was Storer's, and thereupon Banks applied to Storer, who told him that the land belonged to Tucker, and he finally settled with Tucker, and allowed the rent in the account. No conveyance of the land and no agreement for the sale had been made in writing. By the original agreement, Tucker was to pay interest upon the agreed price from the time that he gave notice to Storer to remove his office. Storer's claim, disallowed by the commissioner, is for interest on the price from that time, or, if he in equity is to be considered as the owner of the land, for rent for the same time.

The true question, as it appears to me, is: Who under this parol agreement, partly performed, is in equity to be considered as the owner of the land? If the agreement, followed by the acts in part performance, is such an agreement as equity would deem to be sufficiently executed, then the equitable title is in Tucker, if not, then it is in Storer. Are, then, the acts of part performance of such a character as, in the consideration of a court of equity, will take the contract out of the statute requiring all agreements for the transfer of land to be in writing? In my opinion they are. The general principles by which courts of equity are governed in decreeing a specific execution of a parol agreement for the sale of lands, on the ground that the agreement has been partly performed, are, first, that an act shall, or at least may, be deemed part performance when it is clearly apparent that the act was done with a view to the agreement being fully carried into execution, and solely with a view to that. Secondly, that an act will be deemed to be done in part performance, when the act might operate as a fraud on the party unless the agreement were fully performed. 2 Story, Eq. Jur. §§ 761, 762. Such acts, and such only, are permitted by a court of equity to extract a parol contract from the statute. Upon these principles it is now well settled that a payment of part of the price is not a part performance, although the payment can be referred to no other cause than the parol agreement for the purchase. This does not, in the sense of a court of equity, operate as a fraud on the party, though it may be a violation of good faith, and may be the cause of a loss to the party, if the other become insolvent. Still, as he can have what the law considers a complete indemnity, by the recovery of the money paid with the interest, equity does not hold it to be a fraud cognizable in that tribunal. But it is well settled that when the purchaser is admitted into possession under parol contract, that is a part performance. Id. § 761. For if he enters and takes possession under the agreement, unless the agreement will protect him, he will be liable to an action of trespass. If the vendor in this case were allowed to treat the agreement as a nullity, it would clearly operate as a snare and a fraud. To defeat the fraud of the vendor, equity will hold the contract, connected with such acts of part performance, valid to give an equitable title to the land, and will compel a conveyance.

The case stated is precisely the present case. Tucker was allowed to go into possession of the land. For years he considered himself as the owner, and, more than eight years after the contract, exercised acts of ownership by letting the land. He at this time certainly considered the contract valid in equity. Though he did, on the eve of his bankruptcy, hesitate about receiving the rent at first, he afterwards received it, thus, it appears to me, deliberately reaffirming the contract. The act of Storer also, in removing his office, it is not pretended can be referred to any other cause than the agreement for the sale. It appears to me, therefore, that it is a contract partly executed, perhaps on both sides, and that either party would have a right to claim, in a court of equity, a complete and specific execution of the entire contract; and if not on both sides, at least on the part of Tucker.

If this be the correct view of the case, the claim, in the form in which it is presented, cannot be allowed. It results in this: Tucker, in equity, is to be considered as the owner of the land, and Storer has a lien on the land for the purchase-money with the interest from November 27th, 1827, when he removed his office, till the time of the filing of Tucker's petition in bankruptcy; and a right of prior payment out of the land in preference to the other creditors. The just and equitable mode of settling the claim will be, to have the land sold and the proceeds

applied to the payment of Storer's debt, and the excess over that sum will go into the estate, or, if there is a deficiency, Storer will be allowed to prove in concurrence with the other creditors. Or, as it seems probable that the land will not sell for enough to discharge the lien, it may be referred to a commissioner to ascertain the value, unless the parties can agree on the value, and, on this report, the assignees will be ordered to release the bankrupt's right, and the creditor be admitted to prove the residue of his debt.

2. The second claim, rejected by the commissioner, arose in this way. In 1821, James Read & Co. recovered judgment against E. Tucker and Dyer, in which suit property had been attached on the original writ, which was redelivered to the debtors on the accountable receipt of Storer to the officer. The defendants in that suit placed property in the hands of Jonathan Tucker, the bankrupt, to be held in trust for the security of Storer, and the proceeds, when sold, to be applied to indemnify Storer against his receipt. Storer was called upon and was obliged to pay the execution. The amount and the time when paid are not stated, but if the claim is allowed, the execution is to be referred to, to ascertain both the amount and time of payment. The payment is admitted to have been made between 1821 and 1825. There is no doubt that Jonathan Tucker, after receiving the property, was bound to hold and apply it to the discharge of the trust, and that Storer, by a bill in equity, might have enforced the execution of the trust, and compelled him, after the goods were converted into money, to pay over the amount of the execution, if so much had been received upon them. 2 Kent, Comm. 307; 4 Kent, Comm. 533. But as all these transactions took place as long ago certainly as 1825, and probably in 1821, it appears to me that, if the claim is put upon the ground of a trust, the remedy is barred by the lapse of time. Equity, as a general rule, will not lend its aid to enforce stale demands. But besides this general objection to the antiquity of the demand, which is a defense peculiar to equity, the demand is clearly barred by the statute of limitations. The statute does not indeed, in its terms, apply to proceedings in equity, and there are certain peculiar trusts to which the statute is held not to apply. Kane v. Bloodgood, 7 Johns. Ch. 111. But in all cases of concurrent jurisdiction, where there is a remedy at law as well as in equity, the statute is held to apply with the same force in equity as at law; and the court holds itself bound by the statute. 2 Story, Eq. Jur. § 1520; Kane v. Bloodgood, 7 Johns. Ch. 90; Hovenden v. Lord Annesley, 2 Schoales & L. 607; Robinson v. Hook [Case No. 11,-956]. And in cases where the jurisdiction is exclusively in equity and there is no remedy at law, if a party has been guilty of such laches as would have barred his right if it had been a legal right, courts of equity hold the equitable right to be lost by the lapse of time, in analogy to the statute. Bond v. Hopkins, 1 Schoales & L. 413, 429. Whether this trust, then, was one that could or could not be enforced at law, the result will be the same. In the first case the statute will be a direct bar, and in the second it will be held a bar, in analogy to the statute.

But it is said that the claim may be allowed in the open and running account between the parties, and that, as the last item of charge in the account is within six years, this, under the law of this state, takes the whole account out of the statute. By that statute, in an action on "an open and mutual account current," the cause of action is deemed to have accrued at the time of the last item proved in the account. Of course, as in the account there is one item within six years, this will extract the whole account from the statute.

In the first place it is to be observed that this is an unliquidated claim against Tucker. It is not for the amount paid on the execution, but a claim of indemnity on the trust fund placed in his hands. The amount realized from that may be less than the execution, and to ascertain what the claim amounts to, an account must be taken. This has never been done. Now until the amount is ascertained, it does not appear to me that it can properly be entered as an item in an open and running account. And this seems to be the view which the creditor himself took of the matter, for though the account comes down to 1836, this is nowhere entered on his books as an item of charge. Now it may be admitted that, if this amount had been ascertained and entered on Storer's books as a debit, the latter items in the account would have taken this out of the statute. But certainly the current account can extract nothing from the operation of the statute, which does not appear in the account. It can only save such claims, of more than six years' standing, as have been entered by the party in his books, in the regular and ordinary course of his business.

But it is further contended by the creditor, that, as the demand is uncertain, the statute will not begin to run against it, until the amount is ascertained, and that when it is, and not before, it may be entered on the account as a debit. This in a certain sense is undoubtedly true. Where A has a claim against B of an uncertain amount, and they come to a settlement and determine the amount by mutual consent, the limitation will not begin to run but from the time of settlement, though the claim and right of action may have originated some years before. But this is because the settlement and acknowledgment of the debt amount to a new promise, and the debt, in relation to the statute, is considered as having its commencement at that time. If Storer and

Tucker had made such a settlement, even after six years had elapsed, this would have taken the demand out of the statute, for here would have been a new promise. It might, then, have been entered on his account and escaped the limitation. But no such settlement and acknowledgment of debt has ever been made.

This claim had its origin, it is admitted, as far back at least as 1825. Before that time, Storer had paid the execution, and Tucker had sold the property. At that time, Storer could have enforced his right, by an action of account or of assumpsit at common law, or at least by a bill in equity, and the limitation began to run from the time that the right of action accrued. Now it will not be contended, where there is an open and running mutual account, that a party, who has slept on a demand for more than six years without entering it on his account, can save it from the statute by entering it on his current account after the period of limitation has completely elapsed. Such a construction of the statute would open a door to unlimited confusion and fraud. Besides it is clearly inadmissible on the plainest legal principles, because the statute bar is complete and perfect before the entry, and such an entry on the books of the party cannot restore life to a claim already dead.

I should have been well satisfied if I could have found my way on firm and safe grounds to another conclusion, for, from the admissions of the parties, as I understand them, especially connecting them with the unsettled account in Tucker's books with E. Tucker and Dyer, there is reason to believe, or suspect at least, that there was a balance in favor of Tucker and Dyer, which ought to have been applied to the indemnity of Storer. If, therefore, I could see any legal ground on which the claim could be supported, I would refer it back to the commissioner for further explanation. But in every view which I can take of the case, on the facts which are undisputed, it seems to me that the statute is a conclusive bar, and the court cannot bend the established rules of law to meet the equity of particular cases.